Karavas, Appellant, *v.* Poulos.

Argued March 21, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Allen N. Brunwasser,* for appellant.

*Kim Darragh,* with him *Frederick N. Egler,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, April 18, 1955:

The plaintiff, Nick Karavas, brought an action in trespass against Arnast Poulos and Gust Mitchell, doing business as Mitchell's Grill & Bar, to recover damages for personal injuries sustained when he fell while attempting to seat himself on one of a number of stools at the counter in defendants' establishment. In the fall the plaintiff fractured his left hip. He also claimed that this fracture was aggravated because the defendants did not properly care for him after he was injured. After a jury trial there was a verdict for the defendants. Plaintiff filed a motion for new trial which was denied and plaintiff appeals from the judgment entered on the verdict, assigning trial errors.

Plaintiff's evidence as to the occurrence, consisting of his own testimony and that of his son-in-law, Jim

Kontos,[1] was as follows: Plaintiff entered the defendants' establishment out in Pittsburgh, at 10:30 P.M. on May 21, 1951 to await a telephone call from his daughter, Mrs. Kontos. He testified that he waited for the call for about two and one-half hours, during which time he stood at the bar and had three drinks of whiskey. Then, after he received the telephone call, he went to the restaurant part of the bar or counter and ordered a sandwich. While attempting to sit on one of the stools in front of the counter, he fell to the floor. His testimony describing the accident was: ". . . When my buttocks went up to sit, it went under me, and I grabbed the other chair for protection and it fell on top of me too. Q. What went from under you? A. The stool slipped from under me and I grabbed the other chair and that fell on top of me too.". The bartender, who came to his assistance, picked him up and placed him on a chair beside a table. Plaintiff testified that he suffered pain and cried out ". . . I am hurt. Take me to the hospital.". Kontos, the son-in-law, testified that as the result of a telephone call received by his wife "around" 12 o'clock, he went to defendants' establishment, arriving there approximately between 12:30 and 1 A.M. He found his father-in-law sitting on a chair, leaning on the table. Kontos had come in a truck and plaintiff was placed in the front seat of the truck where he sat while the son-in-law drove to the Kontos home in Dormont, several miles from the scene of the accident. He remained at the Kontos home until taken to a hospital around 7:30 or 8 o'clock in the morning, where it was discovered that his hip was fractured.

---

[1] Neither of them spoke English and their testimony was translated by a daughter of the plaintiff whom the court permitted to act as interpreter.

Defendants' version appears from the testimony of the bartender, the only witness called by them as to the occurrence. He testified that while waiting on other customers at the bar he heard a noise, turned around and saw plaintiff lying on the floor; that he didn't know what had happened but he picked up the plaintiff who was "white as a ghost", and sat him on a chair; that plaintiff asked that his daughter be called; that a waitress immediately called the daughter who said someone would come for her father; that upon being so advised plaintiff said he would wait. The bartender then resumed his customary duties.

In his complaint plaintiff charged that his fall was due to defendants' negligence in not having the stools fastened to the floor or otherwise safeguarding them from slipping on the floor which was "kept in a slippery and littered condition", and the failure to provide a rail to enable patrons to use the stools which were "higher than safety would require". Although the floor was smooth, there was no evidence that it was unduly slippery or in a "littered condition". The plaintiff gave no such testimony, although he stated that he frequented defendants' establishment. He also stated that the stool was "a good one". Kontos, the son-in-law, testified that he also frequented the defendants' place and was in and out of it twelve hours a day; that the floor was a "Clean, shiny, new floor", made of wood or rubber blocks similar to the floor in the anteroom of the court house. He also testified that all of the stools along the counter were alike, steel stools with four legs and a smooth plastic top. He did not state the height of the stools but affirmed that they were similar to those "you see in most restaurants". Defendants produced in court one of the same stools that were in their place of business at the time of the accident. Its identity was not questioned by the plain-

tiff and by actual measurements made in the presence of the jury, it was two and one-half feet in height with four legs fifteen inches apart at the floor, braced by two tubular bands, one twelve inches and the other nineteen and one-half inches above the floor. There were metal caps on the legs. A preposterous estimate given by the plaintiff that the stools were "about five feet tall" was incredible.

We know of no case, nor have we been referred to one, holding that there is a duty to have stools at a bar or counter of this kind fastened to the floor, or that a rail must be maintained at the foot of the counter. As to the latter, there was no testimony as to the existence or absence of such a rail. In any event, what caused the stool to slip, if it did, was a matter of conjecture and surmise. The mere happening of the accident did not establish negligence and we agree with the court en banc (and the jury) that the plaintiff failed to establish that his fall resulted from any negligence on defendants' part. This, appellant's counsel practically conceded in his oral argument, and we find nothing in the alleged trial errors bearing on the cause of the accident that betters his position. The first complaint is that the trial judge erred in permitting defendants' counsel to elicit on cross-examination of plaintiff's doctor that the hospital records recited in the history of the case that plaintiff had fallen from the stool as a result of a dizzy spell. This history was given at the hospital by the appellant's daughter because of the plaintiff's inability to speak English. The plaintiff had testified that about two years before the accident he stopped working because of adverse effect upon his health, and thereafter was subject to dizzy spells, although he denied that he had a dizzy spell at the time of his fall. Undoubtedly the cross-examination objected to permitted the jury to find that plain-

tiff's fall was the result of dizziness, but it supplied no proof of culpability on the part of the defendants in the maintenance of their premises, and if the trial judge erred in this regard, it was harmless error in view of the insufficiency of the evidence to establish negligence. The same is true of plaintiff's other complaint that statements in the court's charge and during colloquies in the jury's presence indicative of the court's opinion that no negligence had been established, were prejudicial.

We turn to consideration of the alleged trial error relating to the plaintiff's additional complaint that his injury was aggravated by the failure of defendants to properly care for him after the accident. Plaintiff's contention is that even if his fall was not attributable to any negligence on defendants' part and even if there was no duty to come to his aid, the bartender, defendants' employe, having volunteered assistance, failed to exercise the reasonable care required in administering such assistance. Appellant relies upon §324 of the Restatement of Torts. This section reads: "One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge; (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.".

Under this section of the Restatement the good Samaritan incurs a responsibility avoided by those who "pass by on the other side". If accepted as a correct statement of the law, it should not be extended in its application, and we do not think the rule pronounced would permit the imposition of liability under the cir-

cumstances here presented. Plaintiff's counsel claims that the plaintiff should not have been placed on his feet. The plaintiff testified that the bartender ". . . picked me up and I walked to the chair with [him].". There was no evidence of any external injuries. It was not discovered that he had suffered a fracture of his hip until he was hospitalized the next day. Due care in any case is the care usually exercised by men of ordinary prudence in like cases and under like circumstances.[2] We cannot find that the bartender's action was other than that which would have been undertaken by a reasonably prudent man. Nor do the facts justify the imposition of liability because the plaintiff was allowed to remain in the chair while the arrival of a member of his family was awaited. His daughter was immediately notified of the accident. It is true that, contrary to the testimony of the bartender that plaintiff asked that his daughter be called, plaintiff testified that at the time of the accident he exclaimed ". . . I am hurt. Take me to the the hospital.". If this is to be considered a request rather than an involuntary exclamation, he made no such further request of those in charge of the defendants' place after he was moved to the chair. He at no time indicated the seat of his pain or injury.

Under Clause (b) of the Restatement above quoted, to subject the volunteer to liability for discontinuing aid to the injured person, it is also necessary that as a result the latter is left in a worse position than when the volunteer took charge of him. There was no evidence that the plaintiff's condition was aggravated while awaiting the arrival of some member of his family. However, aggravation could readily have occurred

---

[2] See *Sweeney v. Blue Anchor Beverage Co.*, 325 Pa. 216, 223, 189 A. 331.

while sitting in the truck during the ride of several miles to his daughter's home. Plaintiff's counsel complains that the trial judge committed error in refusing to permit him to ask hypothetical questions of his medical witness on direct examination to establish that plaintiff's injury was worsened when he was left seated in the chair until the son-in-law arrived and took charge of him. A hypothetical question should embrace all material facts. See *Roberts v. Pitt Publishing Company,* 330 Pa. 44, 198 A. 668. The proposed hypothetical questions bearing on the aggravation of plaintiff's injury failed to include the uncontradicted testimony of his own witness that after plaintiff was taken from defendants' establishment he rode in a truck a distance of several miles in a sitting position. Moreover, to impose liability for any aggravation of the injury, it must have been the result of defendants' negligence. As above indicated, we are of the opinion that under the circumstances the bartender was not derelict in his conduct. In Comment g. upon §324 (b) of the Restatement, the following appears: "The fact that the actor gives another gratuitous assistance does not require him to continue his services until the recipient of them gets all the benefit which the actor is capable of bestowing. However, the actor while in charge of the other must act with reasonable consideration for his safety. If the actor has removed the other from a dangerous situation so that he is then in safety the actor cannot change his position for the worse by putting him back into the same peril or into a new peril similar to the old. Thus, while A who has taken B from a trench filled with poisonous gas does not thereby obligate himself to take him to a hospital much less to pay for his treatment there until he has recovered, he cannot throw B back into the same trench or into another filled with similar gases. Nor, if he

chooses to take charge of B, can A leave him in the middle of a country highway exposed to the risk of being run over by passing cars although this is a risk slight as compared with that from which A has taken him.".

We are satisfied that none of appellant's assignments of error justifies the grant of a new trial and that the outcome of this case should not be disturbed.

Judgment affirmed.