DeFrank, Appellant, *v.* Sullivan Trail Coal Co.

Argued April 21, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused June 23, 1967.

*George I. Puhak* and *Andrew I. Puhak,* with them *Eugene Chovanes,* for appellants.

*J. Earl Langan,* with him *Saverio Rosato,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, April 24, 1967:

This is an appeal by the plaintiffs, from judgment of compulsory nonsuit. Plaintiffs, August DeFrank and Clara DeFrank, his wife, own two buildings in the

City of Hazleton, Pennsylvania, one of which was damaged by fire on February 24, 1962. The buildings were occupied by the Hazleton Sanitary Wipers, a trade name of August DeFrank's business, whose merchandise and equipment was destroyed.

The appellee, Sullivan Trail Coal Co., was engaged in strip mining coal in the westerly section of the City of Hazleton, and in the course of its work, used explosives. Shortly before 1:00 o'clock in the afternoon, a fire was discovered on the second floor of the two story building. Appellants sued appellee in trespass, alleging that an explosion, set off by defendant, shook the ground, causing a short circuit in the electrical terminal box, in the building on the second floor, from which the arcing electrical current started the fire. The trial judge, at the conclusion of plaintiffs' case, on motion by defendant, granted a compulsory nonsuit. Later, after argument before the court en banc, the plaintiffs' rule to remove judgment of compulsory nonsuit was discharged. This appeal followed.

We must be guided in our review by the rule that: "In considering the appeal from the refusal of the court below to take off the nonsuit, appellant must be given the benefit of all favorable testimony and every reasonable inference of fact arising therefrom and all conflicts therein must be resolved in his favor [citing cases]." *Wilson v. Howard Johnson Restaurant*, 421 Pa. 455, 219 A. 2d 676 (1966).

The factual determination to be resolved was who or what caused the fire, Mr. DeFrank's contention being that the blasting of the appellee in its coal mining operation caused the building to shake and short circuit the terminal box. He testified that at about 10:30 that morning, while sorting and grading rags in the performance of his work, a blast was set off that shook the building. At the time the fire broke out, however, no one was in the two story building, Mr. DeFrank

having left that building to go to the one story building housing the boiler room for the purpose of preparing the furnace for the weekend. He testified that: "I went downstairs. I checked all my doors which takes about five minutes to do it slowly and safely. So I came out of the big building. I looked at my watch again about quarter of one. And between the two buildings there's a driveway, and I got almost a little over the half-way mark,—that was about quarter of one—they put this other shot which vibrated me and I almost dropped the clock out of my hand, and I almost went over. So I kept going down. It took me a little time to straighten up so I took a little time and I went down into my laundry. I put thirteen shovels of buckwheat coal into my hopper, that is for the furnace. After I got done with that I came out. I grabbed the barrel, and I had my big laundry door open which leads into the laundry. And I seen smoke coming over the building." He further related that upon seeing the smoke, he looked up in the window and saw "red, green, blue flashes of every description".

The parties at trial stipulated: ". . . that in accordance with practice and custom the defendant corporation, within two weeks following the date of this fire, which was on February 24, 1962, the defendant corporation furnished the City of Hazleton with a copy of the company's records showing that at its Crystal Ridge stripping operation in Hazleton two shots were fired, one at 12:30 p.m. and one at 12:32 p.m.; that this information is taken from and corresponds with the original records of the defendant corporation." The record does not show, although in the opinion of the court en banc there is the statement, that the blasting conducted by the defendant in connection with its strip mining of anthracite coal was on a tract of land located approximately 800 feet west of the appellants' property.

Appellants, among other witnesses called to prove liability, called as experts, Stogdell Lesh, graduate electrical engineer engaged in electrical work for 38 years, and William B. Murphy, a graduate of the Pennsylvania State University, with a degree of Master of Science in Electrical Engineering. A hypothetical question was propounded to each of the expert witnesses, and after much time consumed, questions and answers and objections made, the trial judge, on motion of defense counsel, struck from the record the testimony of the witness, Mr. Lesh. A similar motion to strike the testimony of Mr. Murphy was made by defense counsel and was overruled by the trial judge but his testimony was, however, later determined by the judge to be insufficient and not meeting the required standards of proper expert testimony. The judge, relying on our case of *Bohner v. Eastern Express, Inc.,* 405 Pa. 463, 175 A. 2d 864 (1961), held that the testimony was uncertain, equivocal and contradictory.

The hypothetical question propounded by appellants' counsel to both the expert witnesses, Mr. Lesh and Mr. Murphy, was: ". . . assuming that overhead service wire conductors connected to the power line on a pole entered the second floor of a building through a conduit in the wall; assuming that the wire conductors passed through the conduit to the interior of a meter terminal box fixed on the wall; assuming that the wire conductors passed from the meter terminal box to the main switch on the wall; assuming that meter terminal box was sealed; assuming that there was no trouble or difficulty whatever with the current or wiring in the building prior to February 24, 1962; assuming that on February 24, 1962, at or about 12:30 an explosive blast occurred in the vicinity of the building—that is 12:30 p.m.; assuming that at the time of the blast the ground in the vicinity of the building shook; assuming that on or about 12:45 p.m. on the

same day a fire was observed in said building in the vicinity of said terminal box throwing off different colored lights; assuming further that during the fire an arcing was observed in the vicinity of the terminal box; assuming that there was no fire in the building prior to the blast: Assuming that all of these facts are true, do you have an opinion as to whether or not there is a causal connection between the explosive blast I have described and the fire in the building I have just described? Do you have an opinion?" Mr. Lesh answered this question: "That a fire started on these assumptions. Q. And where did the fire start? A. From the box which had a hole burned through it. Q. And that caused the fire? A. Right." This witness said again: "A. I am saying the conditions as presented here, these assumptions, started a fire, on the assumptions only now. These are assumptions that are made." And again, he said: "A. I made no assumptions. I am basing this opinion right now on these assumptions that are made right here." It is true that during the cross-examination, Mr. Lesh made answers such as "it could" or "it would" or "it might have happened in such a way". We believe a careful reading of the record indicates that Mr. Lesh properly answered the hypothetical question as propounded, assuming the contents of the hypothetical question as facts. The trial judge should have permitted the witness' answer to be submitted to the jury for its consideration and determination.

Mr. Murphy was propounded the same hypothetical question and his answer was: "A. That it was caused by the blasting in the adjacent stripping." And he also said: "A. I said there had to be a disturbance in the box to cause the ground that was created, and I attributed that disturbance in the terminal box—the vibration of the shock wave or the ground wave from the blast that was supposed to have occurred at that

time, that I was informed occurred approximately at that time." Counsel for appellee cross-examined Mr. Murphy and established that the witness had previously examined the building and had come to a conclusion concerning the cause of the fire prior to the trial. The witness, however, in answer to a question by the court, said: "A. In other words, if I had answered Mr. Puhak [appellants' counsel] that my supposition was derived only from that hypothetical question, then Mr. Langan [counsel for appellee] could have said, well didn't you submit a report on June 20, 1962, you came to that conclusion before you saw this. And that is why I have to answer the way I am answering. But the hypothetical question submitted by Mr. Puhak covers everything that I had included or analyzed in my report of June 20, 1962. Q. (By Mr. Puhak) So that your answer is that in your opinion you only took into consideration the facts assumed here in this hypothetical question? A. That's right." And later on cross-examination the witness answered: "A. That the blast was responsible for the fire."

The record reveals that the assumptions of fact in the hypothetical question were in evidence and it would have been proper to submit the evidence and the testimony of the expert witnesses to the jury. Hypothetical questions, must, of course, be based on matters which appear in the record and on facts warranted by the evidence. *Gordon v. State Farm Life Ins. Co.,* 415 Pa. 256, 260, 203 A. 2d 320 (1964); *Donaldson v. Maffucci,* 397 Pa. 548, 558, 156 A. 2d 835 (1959); *Karavas v. Poulos,* 381 Pa. 358, 365, 113 A. 2d 300 (1955); *Roberts v. Pitt Publishing Co.,* 330 Pa. 44, 51, 198 A. 668 (1938). There was, in the instant case, sufficient evidence to warrant the hypothetical question propounded.

Since we have determined that the refusal to remove the entry of judgment of compulsory nonsuit was

error, the instant case not being a "clear case" which, on its face, supports the refusal of the lower court to remove the nonsuit, we need not consider the other assignments of error having to do principally with the proof of damages sustained by appellants. The record indicates extensive damage to the building and to the equipment and material being processed. It will suffice to say the evidence submitted to prove the items of damages fell far short of proper admissible testimony on that issue.

Judgment reversed with a venire facias de novo.

Mr. Chief Justice BELL, Mr. Justice JONES and Mr. Justice EAGEN dissent.