## Salomone, Appellant, *v.* Ford Motor Company.

Argued September 19, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Robert B. Surrick,* with him *Cramp and D'Iorio,* for appellant.

*Ernest L. Green, Jr.,* with him *Robert W. Beatty,* and *Butler, Beatty, Greer & Johnson,* for appellee.

OPINION PER CURIAM, November 21, 1967:
Order affirmed.

DISSENTING OPINION BY HOFFMAN, J.:

Plaintiff ordered a new 1962 Ford Fairlane automobile from a local dealer, and took delivery on June 12, 1962. On June 19, 1962, a clear, dry day, at about 10:00 a.m., plaintiff was operating the car in Delaware County. At that time, the car had been driven only 147 miles and had never been serviced or repaired. Plaintiff had been the only driver of the vehicle and had noticed no previous difficulty with it. As plaintiff approached a curve at a speed of approximately 25 miles per hour, he removed his foot from the gas pedal in order to apply the brakes. Instead of returning to its normal position, however, the gas pedal remained depressed and caused the engine to race. Plaintiff reached for the pedal with his hand in an attempt to return it to its normal position. At that time he lost control of the car and crashed into a telephone pole. As a result of the collision plaintiff's automobile was completely demolished.

At the conclusion of plaintiff's evidence, the lower court granted defendant's motion for a compulsory nonsuit. Plaintiff's motion to remove the nonsuit was dismissed and this appeal followed.

Defendant contends that plaintiff has not met his burden of proof as set forth in *Moyer v. Ford Motor Co.*, 205 Pa. Superior Ct. 384, 209 A. 2d 43 (1965). Although I spoke for the majority in *Moyer* and still fully concur in its result, I find that it is inapposite here. In *Moyer*, we had to determine whether plaintiff's evidence was sufficient to support a verdict. Here, the sole question is whether plaintiff has made out a prima facie case to avoid a compulsory nonsuit. The quantum of evidence necessary to avoid judgment n.o.v.

differs from that required to avoid a compulsory nonsuit. See *Devenney v. N. Franklin Township Volunteer Fire Dept.*, 209 Pa. Superior Ct. 378, 228 A. 2d 61 (1967).[1]

Our courts have often stated that a judgment of nonsuit can be entered only in clear cases, and that plaintiff must be given the benefit of all the evidence favorable to him, together with all reasonable inferences of fact arising therefrom. Any conflict in the evidence must be resolved in plaintiff's favor. *DeFrank v. Sullivan*, 425 Pa. 512, 229 A. 2d 899 (1967); *Engle v. Spino*, 425 Pa. 254, 228 A. 2d 745 (1967); *Castelli v. Pittsburgh Railways Company*, 402 Pa. 135, 165 A. 2d 632 (1960); *Borzik v. Miller*, 399 Pa. 293, 159 A. 2d 741 (1960); *Devenney v. N. Franklin Township Volunteer Fire Dept.*, supra.

After a careful study of the record, I conclude that plaintiff presented sufficient evidence to avoid a nonsuit.

Plaintiff was unable to produce direct evidence of causation due to the destruction of the automobile after impact. Therefore, plaintiff had to rely on the testimony of an automotive expert. That expert, Mr. Battaglini, testified that he was familiar with 1962 Ford Fairlane automobiles and had worked on several of their carburetors and throttle linkages. He was then asked the following questions:

---

[1] In *Devenney*, we distinctly noted that the quantum of proof required to avoid a nonsuit differs from the quantum of proof necessary to sustain a verdict. We noted that the standards are often indiscriminately used under the general expression "burden of proof." We further stated to make this point explicit that: ". . . [T]he initial standard [to avoid a nonsuit] is satisfied and the case properly submitted to the jury 'where a reasonable conclusion can be arrived at which would place liability on the defendant.' The second standard [to avoid judgment n.o.v.] is not fulfilled until the evidence presented so preponderates in favor of the conclusion sought as to outweigh in the mind of the fact finder any other evidence." at 384.

"Q. And Mr. Battaglini, assuming that on June 19, 1962, the plaintiff, Paul Salomone, was operating his 1962 Ford Fairlane eight-cylinder automobile in a northerly direction on Wycombe Avenue in Lansdowne, Delaware County, Pennsylvania, and further assuming that Mr. Salomone had possession of this car one week, and further assuming that there was either 142 or 147 miles on the speedometer at that time, and further assuming that as Mr. Salomone was operating his vehicle, as I have indicated, he removed his foot from the accelerator pedal and that the accelerator pedal did not return to its normal position, and that the engine began to race; do you have an opinion as to what caused this situation to develop?

"A. Yes, I do.

"Q. And would you give that opinion, sir?

"A. In my opinion the throttle linkage, which has a spring attached to it and which causes it to return to a closed position much like a screen door, *in my opinion that spring was either disconnected or was defective and broke,* not permitting the throttle linkage to have returned from the position which it happened to be in at this time and not return to its closed position, but *caused the engine to accelerate,* as though it was wide open." [Emphasis added]

Later in his testimony Mr. Battaglini stated that besides being defective, the spring might have been improperly installed. He was asked this question:

"Q. You are saying that this spring either became broken or became unattached?

"A. Yes."

The above testimony certainly was sufficient for submission to the jury. Defendant, however, relies on the following testimony elicited on cross-examination.

"Q. In addition to this spring that you referred to, what other possibilities are there that could have occurred to cause this sticking of the accelerator, as Mr. Salomone said?

"A. That is the most prevalent cause of something like that, a spring breaking or falling off; it could be caused by, in some other *rare cases*, by a binding in the linkage itself." [Emphasis added]

The Court then asked him whether the floor covering might jam the linkage, and he answered that it could. He qualified this answer by stating that if the floor covering did jam the accelerator, one should be able to stop the car before it goes out of control.

Lastly, he was asked the following on further cross-examination:

"Q. Are you telling us that this car, with the accelerator stuck at the point wherever it might have stuck, could have gone all the way down and floored itself, so to speak?

"A. Yes, it could.

"Q. Without any pressure whatsoever being put on it?

"A. That is right, the air flow coming from the carburetor and the vibration of the engine could cause the throttle to go wide open; many cars in accidents you hear about, being wide open after the accident."

It is difficult to tell from the record whether the witness was just describing how a throttle opens because of a defective or broken link, or, whether he was giving another explanation of the cause of the accident. It was for the jury, which had the benefit of hearing and seeing this witness, to determine the meaning and intent of his testimony.

Much is made of the fact that the expert conceded that there were other remote possibilities which might have caused the throttle to open. An expert is not required to rule out every conceivable possibility in order to validate his testimony. See *Smith v. Bell Telephone Company of Pennsylvania*, 397 Pa. 134, 153 A. 2d 477 (1959) ; *Devenney v. N. Franklin Township Volunteer Fire Dept.*, supra. The recent case of *Griffith v. Clear-*

*field Truck Rentals, Inc.,* 427 Pa. 30, 233 A. 2d 896 (1967), being very similar to the instant case, also bears out this point. In *Griffith,* the steering of a truck locked and the driver failed to negotiate a curve. The sole expert for the plaintiff did not examine the damaged parts because the truck had been disassembled. On direct testimony he gave his opinion as to the cause of the accident. "Mr. Stewart, on cross-examination, also admitted that the failure of the steering apparatus *could* have resulted from a latent metal defect, and as he had not seen the broken pieces, he was unable to state whether the defect could have been discovered upon reasonable inspection on the part of the appellant." The court held that such testimony was properly submitted to the jury. It should be noted that the Supreme Court so held despite the fact that *Griffith* involved a motion for judgment n.o.v., where a plaintiff must bear a heavier burden than that imposed in opposing a motion for nonsuit. See *Devenney v. N. Franklin Volunteer Fire Dept.,* supra.

From this record, then, it is clear that the opinion of plaintiff's expert was that the accelerator pedal stuck or became inoperative because of a defective or broken or improperly assembled spring. There was no indefiniteness in his testimony. He did not leave the question to mere conjecture. See *Moyer v. Ford Motor Company,* supra. Consequently, it is my view that plaintiff produced sufficient evidence to avoid a nonsuit under the *Smith* and *Devenney* tests.

The lower court, in granting the motion for nonsuit, also apparently concluded that plaintiff was contributorily negligent. In my opinion the lower court again ignored the rule that only contributory negligence as a matter of law can support a nonsuit. In *Borisoff v. Penn Fruit Co.,* 165 Pa. Superior Ct. 572, 69 A. 2d 167 (1949), our Court stated, in reliance upon *Sargeant v. Ayers,* 358 Pa. 393, 395, 57 A. 2d 881,

883 (1948) : "On a question as to the appropriateness of a compulsory nonsuit, the pertinent inquiry is whether the plaintiff's negligence appears so irrefutably from the evidence in his own case that to permit a jury to absolve him in the circumstances would be to elevate caprice over legally conclusive fact. . . ."

In this case, plaintiff was certainly not contributorily negligent as a matter of law in seeking to release the stuck gas pedal manually, as he approached a curve at 25 miles an hour. The lower court, therefore, in my opinion, improperly usurped the jury's fact-finding function in determining that plaintiff was contributorily negligent.

In summary, I believe that the testimony of the plaintiff's automotive expert was of sufficient weight to avoid the granting of the motion for nonsuit and should have been submitted to the jury. Moreover, contributory negligence as a matter of law cannot reasonably be drawn from the record.

Therefore, I would reverse and grant a new trial.

SPAULDING, J., joins in this dissent.