**Dianne HOLMGREN**

v.

**ROCCO FARMS FOODS, INC. and Richard Columbis DeLawder.**

**Civ. A. No. 74–2458.**

United States District Court, E. D. Pennsylvania.

March 31, 1976.

Francis A. Ferrara, Media, Pa., for plaintiff.

Andrew C. Hecker, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION & ORDER

WEINER, District Judge.

This is a diversity action arising out of an automobile accident which occurred approximately four hundred feet west of Concord Road on U.S. Route, 1, Concord Township, Delaware County, Pennsylvania. Plaintiff Dianne Holmgren was operating a Ford pickup truck with a horse trailer attached which collided with a truck tractor-trailer owned by the defendant and being operated by Richard C. DeLawder, an employee of defendant. The case was tried before the court and jury and resulted in a verdict for the defendant. Before the court is plaintiff's motion for a new trial.

 Treating the evidence as we are required to do in a light most favorable to the defendant, *Kridler v. Ford Motor Company*, 442 F.2d 1182–83–84 (3d Cir. 1970), the evidence shows that on November 9, 1973, at 1:30 A.M. defendant's vehicle was proceeding north on Route 1, in the right lane at a speed of about 35 miles per hour. It was drizzling and the surface of the highway was wet. When seventy five or eighty feet from a driveway, providing an exit from parking space located on the east side of Concordville Inn, operator of defendant's tractor-trailer observed "lights coming on the road. So I applied my brakes. I did not see no vehicle at the time. I applied my brakes and as I approached the intersection to Concordville, the northern intersection, Miss Holmgren just pulled directly out in front of me and I hit her right in her door." (N.T. May 1, 1975, p. 29). Mr. DeLawder further stated that after the impact he noticed tire marks left on the highway by his vehicle which he estimated to be forty or fifty feet long. (N.T. 30). The plaintiff produced evidence that was contradictory to that offered by defendant which was placed before the jury for

factual decision. In the laboratory of their deliberation, the jury decided to accept the defendant's version as creditable and resolved the liability issue against the plaintiff.

 Initially the plaintiff contends that the Court's charge on the doctrine of contributory negligence was erroneous. The Court defined contributory negligence as follows:

"Contributory negligence is fault on the part of the person injured, which cooperates in some degree with the negligence of another, and so helps to bring about the injury. It is the failure of the person injured to act as a reasonably prudent person properly considerate of himself under all the circumstances. Just in the same way that the defendant has the duty to act in a way that does not subject certain others to an unreasonable risk of harm, so plaintiff herself has the duty not to act so that she would subject herself to a similar unreasonable risk of harm under all the circumstances. *Just as you must judge whether or not defendant was negligent; and whether or not that negligence, if any you find, was a proximate cause of plaintiff's injuries; so you must determine whether on the basis of all the evidence before you plaintiff herself acted in a way that subjected herself to unreasonable risk of harm, and, if she did so act, whether that contributed proximately to any part of her injuries.*

You must also note here that plaintiff's duty involves acting or refraining from acting, in such a way that her negligence does not contribute in any degree to the injury. Defendant's negligence, on the other hand, must have been a substantial factor in causing the injury." (N.T. May 1, pp. 70–71).

The Court has reviewed the case of *McCay v. Philadelphia Electric Company*, 447 Pa. 490, 291 A.2d 759 (1972) relied upon by counsel as supportive of their respective positions. In our view the Court's instructions are in harmony with

the *McCay* holding and constitutes a correct statement of Pennsylvania law.

█ Plaintiff takes issue with the charge on "burden of proof." On this point the Court charged:

"The plaintiff, in the instant case, has the burden of proving, by a fair preponderance of the evidence, that Rocco Farm Foods, Inc. and Richard C. DeLawder were negligent and that their negligence was the proximate cause of the accident." (N.T. May 1, p. 69).

"Remember, ladies and gentlemen of the jury, the burden is on the proponent of a claim, in a civil action such as this, to prove every essential element of his claim by what is known as "the preponderance of the evidence." This means that the party putting forth a claim must prove that the material elements supporting his claim are more likely present than not. If a party urging a claim upon you fails to establish any essential element of its contention by a preponderance of the evidence in the case, that is, if you are not convinced that the essential parts of his story are more likely true than not true, then the jury must find for his opponent on that issue."

and in conjunction therewith affirmed and read to the jury defendant's sixth requested point for charge which stated:

"Six. The burden of the plaintiff in this case is a heavy one; it has been stated as follows:

'. . . when a party who has the burden of proof relies upon circumstantial evidence and inferences reasonably deducible therefrom such evidence, in order to prevail, must be adequate to establish the conclusions sought and must so preponderate in favor of that conclusion as to outweigh in the minds of the factfinders any other evidence and reasonable inferences therefrom which are inconsistent therewith.'

"That is taken from *Smith v. Bell Telephone Company*, 397 Pa. 134, 139 [153 A.2d 477] (1959).

"It is not necessary that every fact or circumstance point unerringly to liability, it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability.

"But that is for you ladies and gentlemen of the jury." (N.T. May 1, pp. 77–8).

█ We believe that our charge on the burden of proof when reviewed in its entirety was in compliance with Pennsylvania law. In examining allegedly erroneous instructions to the jury, it is necessary to view the charge as a whole and not isolated portions thereof. If a part of an instruction is ambiguous or unclear, it is not erroneous if the charge as a whole is clear and correct. *Ely v. Reading Co.*, 424 F.2d 758 (3d Cir. 1970); *Ridgway National Bank v. North American Van Lines, Inc.*, 326 F.2d 934 (3d Cir. 1964).

█ Plaintiff argues that the Court erred with regard to its charge on presumption of due care. During the trial it was stipulated that as a result of her injury Dianne Holmgren had no memory of the accident. In dealing with this problem the Court charged:

"Where plaintiff's mind is blank as to an accident and all its incidents, the presumption is that she did all that the law required her to do and was not guilty of contributory negligence.

Such presumption is a rebuttable one and must give way when the facts as established by plaintiff's evidence show that she was guilty of contributory negligence." (N.T. May 1, p. 71).

We then read to the jury the following plaintiff's and defendants' points for charge:

"Plaintiff's point number six as amended.

Six. Members of the jury, the plaintiff, Dianne Holmgren, because of the injuries she sustains, has no recollection of the facts of this accident. She has what is known as retrograde amnesia. I therefore, instruct you that in the absence of contradictory evidence on the

plaintiff's side of this case—that is, any of her witnesses giving contrary testimony to show she did not exercise due care, then she is presumed to have exercised due care.

Defendant's supplemental point number nine.

Nine. Any presumption of due care to which Miss Holmgren is entitled as a result of a loss of memory is a presumption of fact "which has no evidentiary value and gives way to evidence to the contrary".

But that you must find ladies and gentlemen of the jury from the evidence adduced in this case.

Defendant's supplemental point number eleven.

Eleven. The presumption of due care, when admissible, relates only to plaintiff's conduct. It cannot be used to establish negligence on the part of the defendant." (N.T. May 1, pp. 71–72–73).

We believe that the court's decision in the case of *Dilliplaine v. L. V. Trust Co.*, 223 Pa.Super. 245, 297 A.2d 826 (1972) lays to rest the contention of the plaintiff. In *Dilliplaine* the Court stated:

"When an individual suffers a violent death, there is a presumption that the deceased exercised due care in the actions preceding his death. (citation omitted). This is a presumption of fact which has no evidentiary value and gives way in the face of evidence to the contrary." Id. at 246, 297 A.2d at 826.

. . . . .

"The presumption is also applicable where a party loses his memory or is unable to testify as a result of injuries sustained in the accident. *Heaps v. Southern Pennsylvania Traction Co.*, 276 Pa. 551, 120 A. 548 (1923); *Auel v. White*, 389 Pa. 208, 213, 214, 132 A.2d 350 (1957)." Id. at 247, 297 A.2d at 827.

This Court is of the opinion that the charge was in accord with the state of the law in Pennsylvania and was properly adhered to in the instruction presented to the jury.

Finally, the plaintiff alleges that the trial judge erred in excluding evidence of her expert, by not permitting him to give his calculations and opinions of speed of defendant's tractor-trailer at the time of impact. In order to place this issue in the proper perspective it is necessary to determine whether the record evidence was sufficient to support the witness's competency to place before the jury his opinion regarding the speed of defendants' tractor-trailer at the time of impact. The hypothetical question[1] was predicated upon answers to interrogatories and the usual testimony of a state trooper buttressed by a statement taken from defendant DeLawder. Briefly summarized, the answers to interrogatories placed into evidence the total weight of the trailer and cargo, the number and condition of the wheels, tires and brake equipment. The officer's testimony pinpointed the location of the accident, the position of the respective vehicles after the impact, weather conditions, tire marks of tractor-trailer, posted speed limit of 45 miles per hour. He stated that the tire marks from the point of origin to the point of impact measured one hundred and twenty seven feet. (N.T. April 28, 1975, pp. 14 to 27 inclusive). He then interviewed Mr. DeLawder whom he said gave him the following information:

"At that time he stated he was traveling east on U. S. Route 1 on the right hand lane when he saw headlights shining out onto the road from a driveway about three hundred or four hundred feet ahead on the right. He was doing about forty to forty-five miles per hour and began to slow down. All of a sudden a white pickup truck pulled out of the driveway in front of him. He applied the brakes and began to slide on the wet road and could not stop in time. The front

---

1. Pp. 3, 4, 5 transcript April 30, 1975.

of his truck hit the left side of the pickup." (N.T. April 28, pp. 28–29).

█ The basis of an opinion should rest not only on the facts of record but also without the omission of material facts necessary to form an intelligent opinion. *Arnold v. Loose,* 352 F.2d 959, 963 (3d Cir. 1965); *Karavas v. Poulos,* 381 Pa. 358, 113 A.2d 300 (1955). We were of the opinion that the hypothetical question was improperly framed as it did not encompass the fact that the record included the admission of DeLawder stating that he was driving at a speed between forty and forty-five miles per hour. Subsequently this item was included and opinion evidence was then received relating not to the speed of the defendant's tractor-trailer but to the distance that it would come to a stop. (N.T. p. 6–April 30). We think that the question as propounded focused upon the critical and decisive issue. Defendant contended his speed to be thirty-five miles per hour; when seventy-five or eighty feet from the driveway he saw lights coming on the road; that he observed tire marks forty or fifty feet long. The officer stated that defendant DeLawder informed him that he was driving forty to forty-five miles per hour and he measured tire marks that extended 127 feet. Plaintiff's expert testified that at thirty-five miles per hour the stopping distance would be 102 feet (N.T. p. 8, April 30); and traveling at the speed of forty-five miles per hour the distance required to stop would be 174 feet. To the extent that this factual question turned on credibility, the jury determined to accept as credible the defendant's version and held them to be without fault.

Review and reconsideration has persuaded the court that the plaintiff's position on this point is valid. We now believe that it was prejudicial error of significant proportions to have ruled out the proffered testimony. In *Jamison v. Kline,* 454 F.2d 1256 (3d Cir. 1972), a judgment was entered on a jury verdict in favor of defendant in a diversity case involving a vehicular collision. Plaintiff appealed, contending that it was error for the trial court to have permitted a state policeman to testify to the speed of the vehicle just prior to the accident, based on a chart correlating speed with the length of skid marks. The Court of Appeals held that the chart, which was prepared in the course of scientific inquiry and not for the litigation, was a proper subject of judicial notice. The court further held that the state trooper, who had eight years experience dealing with traffic matters and who testified that he was familiar with the chart, was properly permitted to testify as to facts deduced by mere application of the chart.

And, in *Wise v. George C. Rothwell, Inc.,* 496 F.2d 384 (3d Cir. 1974), a state trooper had been permitted to testify at trial as to the speed decedent's car was travelling at the time of the collision, based on a chart which took into account, length of skid marks, and also based on damage to the vehicles and the location of the vehicles after impact. The Court of Appeals found that the trooper, who had three years experience in the Traffic Division of the police department, was properly allowed to testify as an expert witness.[2]

█ The general rule with regard to expert witnesses is that "the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." *Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313, 317 (1962). Accord *Idzojtic v. Pennsylvania Railroad Company,* 456 F.2d 1228 (3d Cir. 1972).

█ It is, however, reversible error to prevent an expert from testifying on questions which he was qualified to answer. *Bair v. American Motors Corp.,*

---

**2.** A new trial was granted in the *Wise* case because the court found that the trial judge had erred in instructing the jury as to the standard of care to be applied.

473 F.2d 740 (3d Cir. 1973). In this case, the expertise of the witness was unchallenged and his background was such that he clearly possessed the necessary knowledge that would qualify a witness to give the requested opinion. In the exercise of our discretion we have arrived at the conclusion that the interests of justice require a new trial.