**Lorraine S. FILTER, Guardian of the Person of Edward F. Filter, and Lorraine S. Filter, H/W Appellants,**

v.

**Thomas McCABE, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1999.

Filed June 10, 1999.

Reargument Denied Aug. 17, 1999.

Brian Hall, Philadelphia, for appellants.

James B. Burns, Philadelphia, for appellee.

Before STEVENS, LALLY–GREEN and OLSZEWSKI, JJ.

STEVENS, J.:

¶1 In the matter now before this Court, we are asked to determine whether the Restatement (Second) of Torts §§ 323 and 324, collectively referred to as the "Good Samaritan" doctrine, should apply to homeowners. We find that, under the specific facts of the within case, said sections do apply to a homeowner and, as such, reverse the order of the trial court.

¶2 The relevant facts and procedural history are as follows: On December 29, 1995, Appellee hosted a party at his home in Doylestown, Berks County, and among the attendees was Appellant Edward F. Filter, a neighbor of Appellee. The record indicates that both Appellee and Appellant had been drinking during the evening in question.[1] When the party ended, the only persons remaining were Appellee and Appellant, and while in Appellee's basement, Appellant fell, struck his head on the concrete floor, and was rendered unconscious.

¶3 Appellee revived Appellant and placed him on a couch. The following morning Appellant awoke and proceeded home, without informing Appellee that he was leaving. At approximately 9:35 A.M., Appellee called Appellant's home inquiring as to whether Appellant had arrived at home safely. Appellee spoke to Appellant–Wife, Lorraine Filter, who informed him that Appellant was home and asleep, but at no point did Appellee tell Appellant–Wife of the fall Appellant had sustained. Appellee called Appellant–Wife again at 10:35 A.M. and informed her of the fall Appellant had sustained. Appellant–Wife proceeded to check on Appellant, was unable to wake him, and she immediately contacted emergency personnel who dispatched an ambulance. Later that same day, Appellant underwent emergency brain surgery for a subdural hematoma and, as a result of the injury, Appellant has suffered permanent brain damage.

¶4 Appellants, who allege Appellee was negligent in caring for Appellant after his fall and injury, filed their third amended complaint, and the trial court granted Appellee's preliminary objections in the form of a demurrer.[2] This timely appeal

---

1. Lorraine S. Filter, Guardian of the Person of Edward F. Filter, and Lorraine S. Filter, individually, are "Appellants" in this case. For purposes of clarity, we will refer to Edward F. Filter as "Appellant" and Edward and Lorraine Filter, collectively as "Appellants."

2. In Appellant's original and second complaint, the trial court sustained Appellee's pre-

followed.

¶ 5 Appellants allege that it was error for the trial court to grant Appellee's preliminary objections to their complaint. More specifically, Appellants claim that their complaint properly averred a cause of action in negligence based on the Restatement (Second) of Torts §§ 323 and 324, commonly referred to as the "Good Samaritan Laws," as adopted by the courts of this Commonwealth.

¶ 6 Our standard of review was set forth in *American Housing Trust, III v. Jones*, 548 Pa. 311, 316, 696 A.2d 1181, 1183 (1997), as follows:

> In order to determine whether the trial court properly sustained Appellee's preliminary objections, this court must consider as true all of·the well-pleaded material facts set forth in the complaint and all reasonable inferences that may be drawn from those facts. *Werner v. Zazyczny*, 545 Pa. .570, 681 A.2d 1331 (1996). Pa.R.C.P. 1028(c) provides that if an issue of fact is raised in preliminary objections, the trial court shall consider evidence "by depositions or otherwise." In conducting our appellate review, we observe that preliminary objections, the end result of which would be dismissal of the action, may be properly sustained by the trial court only if the case is free and clear of doubt. *Greenberg v. Aetna Insurance Co.*, 427 Pa. 511, 235 A.2d 576 (1967).

*American Housing*, 548 Pa. at 316, 696 A.2d at 1183.

■ ¶ 7 We first note that,

> [t]o establish a viable cause of action in negligence, the pleader must aver in his complaint the following elements: A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks; A failure on the person's part to conform to the standard required: a breach of the duty; A reasonably close causal connection between the conduct and the resulting injury; Actual loss or

damage resulting to the interest of another.

*Ferry v. Fisher*, 709 A.2d 399, 402 (Pa.Super.1998). *J.E.J. v. Tri–County Big Brothers/Big Sisters, Inc.*, 692 A.2d 582 (Pa.Super.1997) (holding that the elements of negligence are duty owed, a breach of that duty, a causal connection between the breach and the resulting injury, and actual damages or loss).

¶ 8 In the case *sub judice*, Appellants first claim that they presented facts to support a claim in negligence under the Restatement (Second) of Torts § 323. Section 323 states that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increased the risk of harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323.

■ ¶ 9 The trial court concluded that, because Pennsylvania case law has not applied the Restatement (Second) of Torts § 323 to laypersons, or more specifically to homeowners, Appellants are excluded from making such a claim in negligence against Appellee. We disagree. A review of over one hundred cases in Pennsylvania, which have dealt with Section 323, reveals that homeowners are not excluded from such liability.

¶ 10 This Court has not specifically held that Section 323 applies to homeowners. However, comment b to Section 323 contemplates a situation such as in the within case. Comment`b states, in relevant part, that,

> [t]here are situations in which it is socially desirable, and so legally permissible, to give gratuitous aid even though

liminary objections with leave for Appellants to amend.

the person who gives it realizes that his lack of competence and skill creates some degree of risk, and that the person receiving the aid is unconscious or otherwise incapable of deciding whether to accept or to reject the assistance.

Again, the language of the comment focuses on those who may give gratuitous aid to a person even though the caregivers may not have proper skill and training to provide such services. Comment b continues that a person in this position must do, "the best he can," but, as stated in part c of that same Comment, when the actor renders service or aid he is "not free to discontinue services where a reasonable man would not do so."

¶ 11   There are other jurisdictions who have applied Section 323 to laypersons. For example, the Arizona Court of Appeals in *Ocotillo West Joint Venture v. Superior Court of the State of Arizona*, 173 Ariz. 486, 844 P.2d 653 (1992), found that where a party voluntarily took charge of an intoxicated person, promising to drive him home, and then placed that intoxicated person behind the wheel of his vehicle and an accident occurred killing the intoxicated individual, that party could be held liable under Section 323. Therein, the Arizona Court of Appeals held that the Good Samaritan Doctrine creates a duty of care on an individual regardless of whether the aid is provided by a person acting as a government, commercial or private entity.

¶ 12   We conclude the language of the Restatement (Second) of Torts § 323 envisions the assistance of a private person, such as a homeowner, to a person in need of aid. Thus, based on the forgoing plain language of the Restatement (Second) of Torts we will not, as a matter of law, preclude the application of the Restatement (Second) of Torts § 323 from a homeowner such as Appellee. Rather, it is for a jury to determine factually, in the within case, whether there is liability on the part of Appellee.

¶ 13   We now turn to Section 324 to determine whether that Section should apply in the instant matter. Section 324 of the Restatement (Second) of Torts states:

> One who, being under no duty to do so, takes charge of another who is helpless to adequately aid or protect himself is subject to liability to the other for any bodily harm caused to him by (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge; (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.

*Karavas v. Poulos*, 381 Pa. 358, 363, 113 A.2d 300, 303 (1955).[3]

¶ 14   Comment b of Section 324 proposes that "[t]he rule stated in this Section is applicable *whenever one takes charge of another* who is incapable of taking adequate care of himself." Restatement (Second) § 324, comment b. (emphasis added). For example, illustration 1 to Restatement (Second) of Torts § 324 contemplates the following scenario:

> A is run over by an automobile and left lying in the street. B seeing A's helpless condition, takes him in his car for the purpose of taking him to a hospital. B drives the car so negligently, that he runs into a tree. The collision greatly increases A's original injuries. B is subject to liability to A for so much of the harm to him as due to the collision.

Clearly, the above illustrates that Section 324 can apply to a homeowner, such as, in this case.

¶ 159Moreover, the Court in *Karavas, supra*, held that under this Section of the Restatement, the Good Samaritan incurs a responsibility avoided by those who "pass by on the other side."

¶ 16   In *Karavas*, the plaintiff while attempting to sit on a barstool, fell in the defendant's tavern. The defendant's em-

---

**3.** The Supreme Court in *Karavas*, cited the Restatement (First) of Torts. It should be noted that the language of this Section did not change in the Restatement (Second) of Torts.

ployee-bartender picked the plaintiff up and placed him on a chair while another employee of the defendant called the plaintiff's daughter, who, in turn, sent her husband to pick up the plaintiff. The next day it was discovered that the plaintiff had fractured his hip. The plaintiff filed a suit in trespass alleging, *inter alia,* that under the Restatement (Second) of Torts § 324 the defendant was negligent in caring for him after his fall. The Supreme Court held that the facts in plaintiff's case did not warrant a new trial. The Court focused on the fact that the evidence indicated that the defendant's employees assisted the plaintiff to his feet, and immediately contacted the defendant's family who quickly came to defendant's establishment and picked him up.

¶ 17 Initially, we note that the Supreme Court in *Karavas,* did not examine the status of the defendant as a business owner or layperson, but instead focused on the action undertook by the defendant in caring for the plaintiff. In fact, the *Karavas* court applied the elements of Section 324 in making its decision that the defendants acted in a reasonable fashion in caring for the plaintiff after his fall. Moreover, the defendants in *Karavas,* similar to the status of Appellee herein, did not possess the specialized skill to give the plaintiff the best care.

¶ 18 We now turn to the facts as averred by Appellants. Herein, we are faced with a distinguishable situation from that in *Karavas.* Appellee in this case witnessed Appellant's fall and upon being revived, Appellant was unable to respond to Appellee's questions. However, Appellee never contacted Appellant's family nor sought medical assistance for Appellant, but, instead, simply placed him on a sofa and proceeded to bed. Upon initially calling Appellants' home, Appellee did not inform Appellant–Wife of the fall Appellant

had sustained. Appellee, instead, waited another hour to call her and explain what had occurred the prior evening. At that point, Appellant–Wife was unable to revive her husband.

¶ 19 Based on the forgoing review of the language of the Restatement (Second) of Torts and the applicable caselaw, we cannot, as a matter of law, preclude the application of Section 324 to Appellee-homeowner. Rather, it is for a jury to determine whether there is liability on Appellee for his conduct in the within case.

¶ 20 To summarize, we hold that both Section 323 and Section 324 of the Restatement (Second) of Torts are applicable as to homeowners under the specific facts herein. Thus, we cannot preclude Appellants' claim as a matter of law.[4] Under said facts, it is clear that Appellee took charge of the helpless, injured Appellant after his fall. The reasonableness of Appellee's actions in caring for Appellant once he undertook to render aid and whether Appellee's discontinuing that care left Appellant in a worse position is a question of fact and, as such, must be determined by a fact finder, and not by the trial court as a matter of law. *Hamil v. Bashline,* 481 Pa. 256, 269, 392 A.2d 1280, 1286 (1978)(holding, "[o]nce a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in the plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm"). Thus, it was error for the trial court to dismiss Appellants' claim based on a failure to aver facts to support a claim under the Restatement (Second) of Torts §§ 324 and 323.

---

**4.** We note that the trial court referred to "human and social concerns" in applying Sections 323 and 324 to a homeowner who has lent assistance to an injured party. However, in its memorandum decision, the trial court does not specifically state those con-

cerns. This Court recognizes the importance of a policy that encourages people to come to the aid of a person in distress and the need to balance that policy with the standard of conduct as set forth in Sections 323 and 324.

¶ 21   Based on the forgoing, we reverse the decision of the trial court and remand with instructions to the trial court to reinstate Appellants' complaint.

¶ 22   Reversed and remanded; jurisdiction relinquished.