## Smith et al., Appellants, *v.* Penn Federal Corporation.

Argued March 27, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*J. Thomas Hoffman,* for appellants.

*J. Roy Dickie,* with him *H. A. Robinson,* of *Dickie, Robinson & McCamey,* for appellee.

OPINION BY MR. JUSTICE LINN, April 23, 1934:

The appellants, husband and wife, sued defendant, operating a motion picture theatre in the City of Pittsburgh, to recover for injuries sustained by the wife in the theatre. The jury rendered a verdict for the defendant. The alleged negligence relied on was inadequate

lighting in view of the construction of the theatre at the place of the accident. The questions of negligence and contributory negligence were submitted to the jury in a charge of which no complaint is made. The assignments of error complain that the verdict is against the evidence; that a model of the theatre was rejected and a view was refused; that opinion evidence offered by the plaintiffs was rejected, and that such evidence offered by the defendant was improperly received. We all agree that there was no reversible error. The measure of care required by the operator of such a theatre has been stated in the opinion this day filed in Haugh v. Harris Brothers Amusement Co. [supra, 314 Pa. 289] and need not be repeated.

There was no abuse of discretion in refusing a new trial on the ground that the verdict was against the weight of the evidence: Rose v. Adelphia Hotel Co., 300 Pa. 1, 149 A. 644; Hegarty v. Berger, 304 Pa. 221, 155 A. 484. Nor was there error in refusing the motion for a view; indeed, counsel did not except to the refusal of the motion. In addition, plaintiff's husband, who stated that he was a consulting engineer, testified in detail to measurements made by him of the steps and the incline or ramp involved. He produced a miniature model of the place which the court declined to receive in evidence, because the plaintiff testified that it was not an accurate representation, that he had reduced relative dimensions. Photographs giving a clear idea of the place were put in evidence.

Plaintiffs entered the theatre during the showing of a picture and were standing in an aisle at the rear of the theatre looking for seats. An usher told them that they could not remain where they were, and pointed out one seat near them in the last row. This last row of seats was reached from the aisle by a stairway of three steps; the next two rows of seats were reached by a ramp, or incline, about three feet long. In going to the seat in the last row, Mrs. Smith testified that she "went up that in-

cline" and "took two steps then from the incline," which placed her on the level at which the seats were. It is clear, therefore, that she stepped from the top of the incline leading to the second and third last rows of seats to the top step of the flight leading to the last row, and from there to the level on which the seats were constructed. Soon after, when other patrons left the theatre, she arose to join her husband and find seats in another part of the theatre. She says that she stepped from the seat aisle with her right foot, which would place her on the top step, and from there took a step with her left foot, thinking that she "would touch the incline that I came up on and I just dropped down and I was dazed and I didn't know where I was." She stated that she "put my other foot out to the incline and it dropped down into space." She evidently misjudged the height of the top step above the incline at the point from which, a short time before, she had stepped up. At the end seat of the second last row (and immediately in front of the seat she had occupied) was affixed a light so shaded that it illuminated the floor immediately below, that is, the tops of the incline and steps leading to the last rows of seats. There was also a light, covered with an amber shade, in the ceiling above the aisle at which plaintiffs entered.

The evidence of plaintiffs' expert, Williams, was rejected because he did not qualify to give an opinion, a good reason for rejecting it. The assignments of error to the rejection of evidence of the other expert, Ferguson, are misleading because the opinions apparently sought by the questions which he was not permitted to answer and referred to in the 5th, 6th and 7th assignments of error, were subsequently given in his evidence: Graybill v. Pullman Motor Car Co., 71 Pa. Superior Ct. 129, 133. He was allowed to testify that he did not consider safe or practicable "the combination of ramps and steps in the same exit......because of the tendency to either think you were using steps alone or ramps alone."

The physical situation as described by the witnesses, and particularly as shown by the photographs, was simple and readily understood and did not require opinion evidence: Graham v. Penna. Co., 139 Pa. 149, 21 A. 151; Closser v. Washington Twp., 11 Pa. Superior Ct. 112, 124.

There is nothing in the complaint that defendant's witness was permitted to testify that the type of lighting in the theatre was "in accord with the best known practice in [his] profession in theatre lighting"; the value of his evidence as to the use of the shaded light at the end of the second last row of seats, referred to above, was for the jury.

The judgment is affirmed.