## Donaldson, Appellant, *v.* Maffucci.

550

Argued October 5, 1959. Before JONES, C. J., BELL, JONES, COHEN, BOK and McBRIDE, JJ.

*Michael Hahalyak,* for appellants.

*Samuel H. Jubelirer,* with him *Ellis William Van Horn, Jr.,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, November 24, 1959:

Dorothy Donaldson, the wife-appellant, was injured in an automobile accident in the late evening of July

17, 1954 and admitted to the Bedford County Memorial Hospital in the early morning of July 18, 1954. The appellee, Dr. Maffucci, her private physician, was summoned and upon his arrival at the hospital an X-ray examination, at his direction, was made of Mrs. Donaldson's left wrist and jaw. This examination indicated a "Colles fracture" of the left wrist consisting of a "fracture of the distal radial metaphysis with marked posterior and lateral displacement of the distal fragment which is rotated posteriorly and over-rides the proximal fragment for about 1cm" and a "fracture of the ulnar styloid". Mrs. Donaldson's upper lip had a 2″-2½″ laceration.

Dr. Maffucci then performed a "closed reduction"[1] of the fractured wrist, under anesthesia, sutured the lip, directed another X-ray examination and applied a cast to the left arm from the elbow down to the tips of the fingers. Later on the same morning Dr. Maffucci removed the cast and manipulated the fracture, without anesthesia. An X-ray examination then made indicated that the overriding of the bones had been corrected, that there was "about 5mm posterior displacement of the distal fragment . . . now rotated posteriorly for only 15 degrees" and that the position was improved over that shown in the previous film. The cast was then reapplied. Dr. Sipes, the senior surgeon of the hospital was called into consultation by Dr. Maffucci; on July 22nd Dr. Sipes recommended an "open reduction"[2] which never took place. Another X-ray examination was made on July 23rd which indi-

[1] A manipulation of the bones for the purpose of securing a proper alignment *without* cutting.

[2] A manipulation of the bones for the purpose of securing a proper alignment by cutting open the area, obtaining a visual picture of the bones and attempting to secure alignment by the placement of foreign objects, such as wires, plates, screws, etc., for that purpose.

cated that the improvement of position obtained by the second "closed reduction" had been lost. This examination was not interpreted for Dr. Maffucci until after Mrs. Donaldson had left the hospital on July 24th. At the time Mrs. Donaldson left the hospital her left arm from the elbow to the tips of her fingers was enclosed in a cast. Dr. Maffucci did not treat Mrs. Donaldson subsequent to July 24th.

On July 28th Mrs. Donaldson consulted a Dr. Palin, who, upon examination, found some deformity in the wrist and some stiffness in the finger joints. Mrs. Donaldson was readmitted on July 28th to the hospital where a further examination by X-ray and fluoroscope revealed the existence of the same conditions as noted in the X-ray examination of July 23rd. Dr. Palin then attempted another "closed reduction" on July 29th. Mrs. Donaldson left the hospital on July 31st and remained thereafter under Dr. Palin's care. She was readmitted to the hospital on September 20th, it having been discovered that, despite Dr. Palin's attempt at a "closed reduction", a non-union of the bones existed. While at the hospital two "open reductions" were performed by Dr. Palin which included the insertion first of wires, then later of a bone plate. At a subsequent time, at Dr. Palin's suggestion, Mrs. Donaldson consulted a Dr. White in Pittsburgh who performed further operations on the wrist.

On June 30, 1956 in the Court of Common Pleas of Bedford County Mr. and Mrs. Donaldson instituted a trespass action against Dr. Maffucci alleging that he had been guilty of malpractice. The matter came on for trial and, at the close of appellant's testimony, the court below entered a compulsory nonsuit. From the refusal to take off this nonsuit this appeal was taken.

The reason assigned for the entry of the nonsuit by the court below was: ". . . plaintiffs had clearly failed to meet the burden of proof required in malpractice

cases . . . ." in that they "were bound to produce expert witnesses whose testimony would support their claim and who would conclude that, in their professional opinion, [appellant's] injury resulted from [appellee's] negligence."

Appellants urge four reasons why the nonsuit should be lifted: first, under the instant factual situation expert testimony was unnecessary; second, even if such expert testimony were necessary, it was supplied by appellant's medical evidence; third, evidence that appellee was in a state of intoxication when he attempted the "closed reduction" of the wrist was improperly excluded; fourth, assuming, *arguendo,* the insufficiency of appellants' medical evidence to establish the requisite negligence as the cause of the injury, the court below erroneously excluded certain testimony through the medium of which negligence would have been established.

In our disposition of this appeal "plaintiffs must be given the benefit of all the favorable testimony and every reasonable inference of fact arising therefrom; and all conflicts therein must be resolved in their favor: [citing cases] :" *Finnin v. Neubert,* 378 Pa. 40, 41, 42, 105 A. 2d 77; *Seburn v. Luzerne & Carbon County Motor Transit Company,* 394 Pa. 577, 579, 148 A. 2d 534.

The standard of care required of a physician or surgeon is well-settled. In the absence of a special contract, a physician or surgeon is neither a warrantor of a cure nor a guarantor of the result of his treatment: *McCandless v. McWha,* 22 Pa. 261, 267;[3] *Tyson v. Baixley,* 35 Pa. Superior Ct. 320, 322. A physician

---

[3] In the *McCandless* case, supra, Chief Justice WOODWARD stated: "The implied contract of a physician or surgeon is not to cure —to restore a fractured limb to its natural perfectness but to treat the case with diligence and skill". In the *Tyson* case, supra, Judge ORLADY said: "A physician or surgeon is not an insurer of his patient's health, nor of a recovery from an abnormal condition".

who is not a specialist is required to *possess* and *employ* in the treatment of a patient the skill and knowledge usually possessed by physicians in the same or a similar locality, giving due regard to the advanced state of the profession at the time of the treatment; and in employing the required skill and knowledge he is also required to exercise the care and judgment of a reasonable man. However, a physician or surgeon is not bound to employ any particular mode of treatment of a patient, and, where among physicians or surgeons of ordinary skill and learning more than one method of treatment is recognized as proper, it is not negligence for the physician or the surgeon to adopt either of such methods: *Duckworth v. Bennett,* 320 Pa. 47, 181 A. 558; *Moscicki v. Shor,* 107 Pa. Superior Ct. 192, 163 A. 341; *Barnard v. Schell,* 85 Pa. Superior Ct. 329; *Remley v. Plummer,* 79 Pa. Superior Ct. 117.

The burden of proof in a malpractice action is upon the plaintiff to prove either (1) that the physician or surgeon did not *possess* and *employ* the required skill and knowledge or (2) that he did not exercise the care and judgment of a reasonable man in like circumstances; *and* that the injury complained of either (1) resulted from the failure on the part of the physician or surgeon to possess and employ the required amount of skill and knowledge or (2) resulted from his failure to exercise the care and judgment of a reasonable man in like circumstances. Furthermore, a plaintiff is bound by the *expert testimony rule* so well expressed by Chief Justice STERN in *Robinson v. Wirts,* 387 Pa. 291, 294, 295, 127 A. 2d 706: ". . . no presumption or inference of negligence arises merely because the medical care or surgical operation terminated in an unfortunate result which might have occurred even though proper care and skill had been exercised, and where the common knowledge or experience of laymen is not sufficient to warrant their pass-

ing of judgment. In such cases the doctrine of *res ipsa loquitur* or of exclusive control may not be invoked, and *expert testimony in support of the plaintiff's claim is an indispensable requisite to establish a right of action*" (Emphasis supplied).[4]

Appellants initially argue that the *expert testimony rule* has no present application because of the factual situation. They urge that a "layman is equally competent [equally to an expert] in determining whether a steady hand had been used in approximating the bone fragments and *whether the bones in this very common type of fracture were properly approximated*". In short, the appellants argue: we have proven a poor result from the treatment for a very common wrist fracture and, since a steady hand on the part of the doctor was all that was required to make a proper "closed reduction" and secure a good result, a jury, particularly with evidence of intoxication before it, would be equally as competent as any expert to find whether the doctor's hand was or was not unsteady. Such argument entirely ignores the absence of any evidence of record to indicate *why* Mrs. Donaldson's wrist was deformed and her fingers stiff and the complete lack of proof of any causal relationship between any act or omission to act on Dr. Maffucci's part and the condition of the wrist and fingers. The record shows that Dr. Palin performed exactly the same operation on the wrist as did Dr. Maffucci and he, too, was unable to secure a maintainable proper bone position. Whether or not Dr. Maffucci exercised skill and diligence in his treatment of Mrs. Donaldson and whether or not the condition of her wrist and fingers was attributable to any failure to exercise skill and diligence on Dr. Maffucci's part required the production of expert testimony which the

---

[4] Authorities in support of this well-established principle are set forth in footnote, p. 294, in *Robinson* case, supra.

appellants failed to furnish. The language of this Court in *Robinson*, supra (pp. 297, 298) is apposite: "The only exception to this otherwise invariable rule [expert testimony rule] is in cases where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of the ordinary experience and comprehension of even non-professional persons, as, for example, where a gauze pad is left in the body of a patient following an operation (Davis v. Kerr, 239 Pa. 351, 86 A. 1007), or where a dentist, in working on a tooth, uses a tool with a small rotating emery disc at the end and allows it to slip and to remain revolving in the patient's mouth, grinding and tearing her tongue (Dux v. Shaver, 105 Pa. Superior Ct. 344, 161 A. 481). So, likewise, there might be imagined a case where a surgeon engaged in removing a tumor from a patient's scalp would let his knife slip and cut off the patient's ear, or where he undertook to stitch a wound on his patient's cheek and by an awkward move would thrust his needle into the patient's eye. It would be a matter of common knowledge and observation that such things do not ordinarily attend the service of one exercising ordinary skill and experience in the work of surgery because they involve ulterior or extraneous acts or omissions the judgment of which would not require scientific opinion."

Appellants' next contention is that, even though expert testimony were required, their witness Dr. Palin supplied such testimony. The court below well answered this contention: "At no time did [Dr. Palin] state that the defendant deviated from proper practices in his treatment of the plaintiff. In fact, the testimony discloses that when the plaintiff first came to Dr. Palin, he used the same method of treatment used by the defendant, that is, manipulation by closed reduction. Subsequently, he attempted to secure a proper alignment by an open reduction which had been

previously advised by Dr. Sipes in the presence of the plaintiff and the defendant. At no time was Dr. Palin asked to give his professional opinion as to the cause of the condition of the plaintiff's wrist and hand when she first came to him for treatment, or when she subsequently returned to him for further treatment, or the cause of the condition of the wrist and hand at the time of trial. . . . In any event, the plaintiffs chose to submit their case on the theory of inferred negligence, . . . .". Our own independent examination of Dr. Palin's testimony reveals not a single instance in which Dr. Palin, by direction or indirection, indicated that, in his opinion, Dr. Maffucci failed to exercise the requisite skill and knowledge or that, in his opinion, the condition of Mrs. Donaldson's wrist and fingers resulted from any failure to exercise such skill and knowledge. On the contrary, Dr. Palin's responses upon cross-examination would indicate that the practices adopted by Dr. Maffucci were appropriate. Even on the subject of the length of the cast, while Dr. Palin indicated that he would have limited the extent of the cast to the knuckles rather than the tips of the fingers, yet he did not indicate that the extent of the cast employed by Dr. Maffucci contributed to the condition of either the fingers or wrist of Mrs. Donaldson. Dr. Palin's testimony did not satisfy the requirements of the *expert testimony rule*.

At trial appellants offered to prove by witnesses that at the hospital Dr. Maffucci by his actions and behavior gave the appearance of being in an intoxicated condition. The trial court properly rejected such evidence under the circumstances. Until the appellants first submitted evidence that the condition of Mrs. Donaldson's wrist and fingers resulted from a lack of exercise of skill and knowledge on Dr. Maffucci's part any evidence of intoxication was irrelevant. Had the appellants shown that, because of some act or omission

to act upon the part of Dr. Maffucci, Mrs. Donaldson's wrist became deformed or her fingers rendered stiff and immobile, then evidence of Dr. Maffucci's intoxicated state at the time he acted or omitted to act would have been admissible. Absent such evidence, the testimony as to intoxication was properly excluded by the trial court.

Lastly, appellants complain of the trial court's refusal to permit appellants' counsel to ask Dr. Palin certain questions. Each of these questions has been examined by us. Each question was a hypothetical question and was addressed to Dr. Palin in the capacity of an expert witness. A *sine qua non* of this type of examination is that the witness be first qualified of record as an expert. It was appellants' counsel's duty to so qualify, if he could, Dr. Palin: however, even though appellee's counsel promptly objected upon the ground that Dr. Palin had not been properly qualified, even then no effort whatsoever was made to qualify him. The opinion of an expert witness may be excluded with propriety where no attempt has been made to qualify such witness as an expert in the disputed field: *Smith v. Penn Federal Corporation,* 315 Pa. 20, 172 A. 147; *Kriner v. Dinger,* 297 Pa. 576, 147 A. 830; 13 U. Pitt. L. Rev. 172. Furthermore, whether Dr. Palin had been properly qualified was a matter within the discretion of the trial court (*Moodie v. Westinghouse Elec. Corp.,* 367 Pa. 493, 80 A. 2d 734; *Hencken v. Bethlehem Municipal Water Authority,* 364 Pa. 408, 72 A. 2d 264) and there is nothing upon this record to indicate an abuse of such discretion. The court below was further justified in its exclusion of these questions, which were hypothetical, because they patently failed to include a full statement of all the material facts: *Karavas v. Poulos,* 381 Pa. 358, 365, 113 A. 2d 300; *Roberts v. Pitt Publishing Co.,* 330 Pa. 44, 198 A. 668; *Albert v. Phila. Rapid Transit Co.,* 252 Pa. 527, 97 A. 680.

Our study of this record convinces us of the propriety of the action of the court below in refusing to lift the compulsory nonsuit. Appellants proved only that Mrs. Donaldson's wrist was deformed and her fingers stiff, a poor result which, however, raises neither a presumption nor an inference of negligent conduct on the part of Dr. Maffucci. Appellants completely failed to prove any negligent conduct which caused the condition of Mrs. Donaldson's wrist and fingers.

Order affirmed.