Charles C. RAY, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 76–114.

United States District Court, M. D. Pennsylvania.

Feb. 8, 1977.

As Amended March 22, 1977.

H. Robert Switzer, Philadelphia, Pa., for plaintiff.

Joseph F. Cimini, Lewisburg, Pa., for defendant.

## OPINION

MUIR, District Judge.

During the first five months of 1974, Ray was an inmate at the United States Penitentiary in Lewisburg, Pennsylvania. In the above-captioned matter and a related case with which it was consolidated, he, along with several other inmates, contended that as a proximate result of the negligence of personnel at the prison, he was injured by exposure to another inmate suffering from an active case of tuberculosis. Pursuant to F.R.Civ.P. 42(b), the first issue tried was whether or not Ray and his fellow Plaintiffs had sustained an injury.

In an Opinion dated October 19, 1976, the Court found that, although each Plaintiff now tests "positive" on a tuberculin skin test, this change from his previous "negative" condition does not amount to a compensable injury. *Plummer v. United States*, 420 F.Supp. 978 (M.D.Pa.1976). Consequently, judgment in favor of the Defendant was entered, except with respect to Plaintiff Ray who, on two separate occasions, suffered an apparently allergic skin reaction to the medication which he received and which is ordinarily prescribed when it is discovered that an individual has recently converted from a "negative" to a "positive" skin test.

At the conclusion of the injury phase of the case, the Court, having tentatively reached its ultimate decision that the only possibly compensable injury among all of the Plaintiffs was Ray's skin rash, took further evidence on the extent of the pain and suffering incurred by Ray from his reaction to the medication. The Court determined that if Ray could demonstrate that his rash was a proximate result of negligence attributable to the Defendant, he would be awarded damages in the amount of $150.00. The case was placed on the December, 1976 trial list for resolution of the remaining issues.

On December 1, 1976, Ray's counsel filed a statement that, with respect to the Government's negligence and the proximate relationship between such negligence and Ray's injury, he intended to rest on the evidence previously presented to the Court. The Defendant had presented no evidence on that question and, up to that point, had had no opportunity to do so.

On December 6, 1976, the Defendant filed a motion to dismiss contending that the evidence adduced at the trial of the injury phase, viewed in the light most favorable to Ray, did not suffice to make out a case of negligence on the part of prison officials.

The motion was denied and the case proceeded to trial without a jury on January 26, 1977. The findings of fact and conclusions of law contained in the October 19, 1976 Opinion in the above-captioned case are incorporated herein by reference. The Court makes the following additional findings of fact (parenthetical references are to pertinent exhibits):

### I. Findings of Fact.

92. A June, 1973 chest X-ray of Samuel Bray showed old, healed lesions on the left lung. (D–3)

93. The June, 1973, chest X-ray was Samuel Bray's routine admission chest X-ray taken soon after his arrival at the Lewisburg Penitentiary.

94. Upon examination on February 8, 1974, Samuel Bray had no fever and no history of bloody sputum. (D–4)

95. Upon examination on February 8, 1974, Samuel Bray did have evidence of pleurisy (which could be due to any type of infection) but no evidence of pneumonia. (Undisputed)

96. Upon examination on February 8, 1974, Samuel Bray gave a history of exposure to tuberculosis in the 1940's. (D–4)

97. Upon examination on February 8, 1974, the diagnosis for Samuel Bray was bronchitis and he was begun on an antibiotic. (Undisputed)

98. A chest X-ray for Samuel Bray, taken on February 7, 1974 and reported on February 13, 1974, was within normal limits and unchanged from the one taken in June, 1973. (D–7)

99. Chest X-rays showing old, healed lesions are considered to be within normal limits and are not viewed as indicative of present disease by pulmonary specialists.

100. Because of the spots on the lung, Samuel Bray had sputum collected for tuberculosis smear and culture. (Undisputed)

101. A sputum smear and a throat smear taken February 8, 1974 from Samuel Bray were reported on February 9, 1974 by the Penitentiary Hospital Laboratory as negative. (D–5, D–6)

102. A sputum smear collected February 10, 1974 from Samuel Bray was reported on February 14, 1974 by the Pennsylvania State Laboratory as negative. (D–9)

103. No tuberculosis precautions were thought necessary with respect to Samuel Bray on the basis of these reports and the negative X-ray of February 7, 1974.

104. On or about February 20, 1974, Samuel Bray was referred to a Penitentiary Hospital physician because of an unresolved upper respiratory infection and the physician diagnosed his ailment as bronchitis. (D–13)

105. Upon examination on February 20, 1974, Samuel Bray again had no evidence of pneumonia. (Undisputed) (D–14)

106. A chest X-ray for Samuel Bray, ordered on February 15, 1974, was read as normal on February 20, 1974. (D–12)

107. The chest X-ray referred to in the preceding paragraph was unchanged from the June, 1973 X-ray referred to in Paragraphs 1 and 2 above.

108. A chest X-ray for Samuel Bray, ordered on February 20, 1974, was read as normal on February 27, 1974. (D–14)

109. The chest X-ray referred to in the preceding paragraph was unchanged from the June, 1973 X-ray referred to in Paragraphs 1 and 2 above.

110. Following his examination on February 20, 1974, Samuel Bray was treated with cough syrup. (Undisputed)

111. On March 8, 1974, Samuel Bray was seen by a Penitentiary Hospital physician because of a runny nose and sneezing. (D–15)

112. Upon examination on March 8, 1974, Samuel Bray again had no evidence of pneumonia. (Undisputed)

113. Upon examination on March 8, 1974, Samuel Bray was thought to have an upper respiratory infection. (D–15)

114. A chest X-ray for Samuel Bray, ordered on April 9, 1974, was read as normal on April 10, 1974. (D–17)

115. The chest X-ray referred to in the preceding paragraph was unchanged from the June, 1973 X-ray referred to in paragraphs 1 and 2 above.

116. On April 12, 1974, sputum again was collected from Samuel Bray for a tuberculosis smear, the result of which was negative. (D–18)

117. On May 13, 1974, two sputum specimens collected from Samuel Bray on February 10, 1974, were reported by the Pennsylvania State Laboratory to contain the tuberculosis germ on culture. (D–20)

118. The state laboratory never indicated that the Bray specimens were unsatisfactory for testing.

119. The May 13, 1974 report was received at the Lewisburg Penitentiary on May 16, 1974. (D–2, second page, line 14 of typing)

120. On May 16, 1974, Samuel Bray was hospitalized, isolated and treated for tuberculosis. (D–21)

121. On or about June 26, 1974, Samuel Bray was discharged from the Lewisburg Penitentiary Hospital, having undergone treatment for tuberculosis for some forty-one days. (D–21) (Undisputed)

## II. *Discussion.*

At issue in this stage of the proceeding is whether any negligence attributable to the Defendant was the proximate cause of Ray's conversion from a "negative" to a "positive" tuberculin skin test, which lead to his treatment with the medication isoniazid (INH) that, in turn, triggered his allergic skin rash. Ray contends that the prison medical staff was negligent in its analysis of Bray's condition and in its handling of sputum cultures collected from Bray for testing at the state laboratory.

Some evidence with respect to the handling of sputum cultures and smears was adduced by Ray and his fellow Plaintiffs at the original trial of this case in September, 1976. The Defendant did not present testimony on the issue at the January 26, 1977 hearing. Nevertheless, the Plaintiffs' evidence, which consisted primarily of a former inmate assistant's recollection of procedures in the laboratory at Lewisburg, was general and not focused on what occurred in this case. As such, it did not suffice to carry Ray's burden of proof with respect to the Defendant's alleged negligence. It is troubling that there was no follow-up on the sputum specimens sent to the state laboratory even though more than twelve weeks had elapsed. However, the Court is of the view that the evidence presented does not suffice to demonstrate the negligence necessary to impose liability on the Defendant in this case. It is also noteworthy that the state laboratory, despite its slowness, never expressed dissatisfaction with the condition of the Bray specimens.

Ray also contends that the Lewisburg medical staff was guilty of malpractice for failing to treat Bray differently than it did during February, March, April, and the early part of May, 1974. The Court is of the view that the physicians at Lewisburg possessed and employed in the treatment of Bray the skill and knowledge possessed by doctors in the locality, giving due regard to the state of the profession in 1974. Likewise, prison personnel exercised the care and judgment of a reasonable man in like circumstances. *Smith v. Yohe*, 412 Pa. 94, 98–99, 194 A.2d 167 (1963); *Donaldson v. Maffucci*, 397 Pa. 548, 553–554, 156 A.2d 835 (1959). More than the usual number of X-rays were taken. Culture and sensitivity tests were performed by the staff at Lewisburg. Treatment appropriate to the "normal" X-ray results and the symptoms reported by Bray was accorded. A doctor, or even a pulmonary specialist, practicing in the Lewisburg area in 1974 would have treated Bray in essentially the same manner. Isolation, which was not dictated until receipt of the report from the state laboratory on May 16, was promptly effectuated by officials at Lewisburg.

Although it is highly probable that Ray's conversion from a "negative" to a "positive" skin test was caused by his exposure to Samuel Bray during March, April, and May, 1974, this result is not attributable to

negligence on the part of the Defendant. Consequently, the Court will enter judgment in its favor.

### III.  *Conclusions of Law.*

In addition to the conclusions of law contained in the Opinion of October 19, 1976, the Court makes the following supplemental conclusions of law:

■  8.  Plaintiff Charles Ray has failed to demonstrate that agents of the Defendant were negligent in the handling of sputum cultures collected from Samuel Bray on February 10, 1974 and sent to the state laboratory for analysis.

■  9.  In their treatment of Samuel Bray during February, March, April, and May, 1974, the medical personnel at the United States Penitentiary in Lewisburg possessed and employed the skill and knowledge usually possessed by physicians in that locality, giving due regard to the state of the profession at that time.

■  10.  In their treatment of Samuel Bray during February, March, April, and May, 1974, the medical personnel at the United States Penitentiary in Lewisburg exercised the care and judgment of a reasonable man in like circumstances.

■  11.  Ray's allergic skin reaction to the medication INH was not the proximate result of negligence attributable to the Defendant.

An appropriate order will be entered.