## Murphy v. Aesthetic & Reconstructive Surgery

*Joseph Kulwicki* and *Edward Shoemaker,* for plaintiff.

*Natalie Dwyer Haller* and *Jack Quinn Jr.,* for defendant St. Vincent Health Center.

*Will Schaaf* and *Thomas Lent,* for defendants Aesthetic and Reconstructive Surgery, Frank M. Tooze, M.D. and Winston Chu, M.D.

LEVIN, *J.,* April 18, 1989 — This matter is before the court on the preliminary objections of all defendants, to-wit, Aesthetic & Reconstructive Surgery, P.C., St. Vincent Health Center, Frank M. Tooze, M.D., and Winston Chu, M.D. The arguments set forth by these defendants are virtually identical, and will be addressed herein as one.

Plaintiff filed a complaint on January 15, 1988, alleging negligence and breach of contract in this medical malpractice action against defendants. It is important to note that plaintiff's count in assumpsit in the original complaint merely incorporated all allegations set forth in the negligence count. Preliminary objections to the complaint were raised by all defendants. By order and opinion dated July 18, 1988, Erie County Judge William Pfadt sustained defendant's motions to strike count II (claims sounding in contract) with leave to amend. The basis of

Judge Pfadt's ruling was twofold, as set forth in his opinion: (1) that plaintiff failed to allege the existence of a special contract or express warranty, and (2) that incorporating the negligence averments into the contract count was insufficient to set forth a contract cause of action. Plaintiff filed an amended complaint on August 11, 1988, once more attempting to set forth a count in assumpsit. Defendants again filed preliminary objections to plaintiff's contract claims which were sustained with leave to amend by order of this court dated October 24, 1988.

Count II of the plaintiff's second amended complaint and defendant's preliminary objections thereto, in the form of a motion to strike, are presently at issue before this court. Specifically, it must be determined whether the plaintiff can proceed on an assumpsit claim for breach of implied contract in this medical malpractice lawsuit.

Contracts between physicians and patients may be express or implied, but the former type is rare. Nonetheless, Pennsylvania has recognized express contracts between doctors and patients in which a physician promises to achieve a specific result. See *Mason v. Western Pennsylvania Hospital,* 286 Pa. Super. 354, 428 A.2d 1366 (1981), vacated on other grounds, 499 Pa. 484, 453 A.2d 974 (1982) (contract for tubal ligation/sterilization); *Speck v. Finegold,* 268 Pa. Super. 342, 408 A.2d 496 (1979), aff'd. in part and rev'd. in part, 497 Pa. 77, 439 A.2d 110 (1981)(contract for vasectomy and contract for abortion); *Shaheen v. Knight,* 11 D.&C. 41 (1957) (contract for sterilization).

On the other hand, an implied contract is one imposed by force of law by virtue of the fact that the parties engage in activities which create mutual obligations. The law in Pennsylvania *does not* rec-

ognize a cause of action for an implied warranty of cure.[1] The physician is neither a warrantor of a cure nor a guarantor of the results of the treatment. *Donaldson v. Maffucci*, 397 Pa. 548, 553, 156 A.2d 835, 838 (1959). See also, *Smith v. Yohe*, 412 Pa. 94, 194 A.2d 167 (1963); *Nolen v. United States*, 571 F.Supp. 295 (W.D. Pa. 1983). Our courts do, however, recognize that the failure to employ reasonable skill in performing a duty may constitute a breach of implied contract. Within the physician-patient relationship, the physician impliedly contracts to employ reasonable skill, judgment, and diligence in caring for the patient and the patient impliedly contracts to pay for the physician's services. *McCandless v. McWha*, 22 Pa. 261 (1853).

This does not mean that an implied contract cause of action lies in every medical-malpractice case. There are fundamental differences between contract and negligence theories. The distinction between the two is evident with regard to the statute of limitations in a medical-malpractice case. The courts of Pennsylvania have held that the two-year statute applicable to causes of action for personal injuries cannot be avoided by pleading implied contract in the alternative. See *Navin v. Byrne,* 638 F.Supp. 263 (M.D. Pa. 1986) (applying Pennsylvania law). This reinforces the view that the gravamen of a plaintiff's action in a medical-malpractice case is in tort, not contract.

There is a surprising lack of appellate authority addressing the issue of implied contract in medical-malpractice cases. However, a number of common pleas courts have held that where an implied con-

---

1. In fact, a Pennsylvania statute specifically sets forth that a health care provider does not warrant/guarantee a cure, absent a special written contract stating otherwise. See 40 Pa.C.S. §1301-606.

tract claim duplicates the negligence claim in a medical-malpractice case, the court must strike the contract action. *Peterman v. Geisinger Medical Center,* 8 D.&C. 3d 432 (1978). The *Peterman* court held that where the complaint in an action to recover from a hospital and doctors for performance of an unnecessary operation contains counts in both tort and assumpsit, the court will dismiss the assumpsit counts as redundant since the action basically sounds in tort. In *Sagulla v. Scullin,* 26 D.&C. 3d 148 (1982), the court was faced with both assumpsit and trespass claims in a medical-malpractice case. It was held that when a count based in trespass contains allegations identical to an assumpsit count, the latter may be stricken as redundant. *Id.* at 150. The reasoning for this is that the standard used to determine the breach of an implied contract is exactly the same standard used to determine if the physician was negligent.[2]

In the case at bar, an examination of plaintiff's second amended complaint reveals that the allegations regarding breach of express contract have been eliminated. Plaintiff admits this. However, count II of the instant complaint still attempts to set forth a claim for breach of implied contract. Count II (in assumpsit) incorporates by reference all of the

2. Recently, a Pennsylvania trial court ruled that a contract would not be dismissed as duplicative at the preliminary objection stage. *Shafer v. Spencer Hospital,* C.P. no. A.D. 1988-372 (Crawford County 1988). The rationale for this holding was that the special facts and circumstances may be developed which would support a breach of contract claim separate from the negligence claim. However, the court made clear that absent such special distinguishing circumstances, the contract claim *would not* go to a jury. This court finds *Peterman, supra,* and *Sagulla, supra,* to be the better-reasoned cases on this issue, in the interest of advancing judicial economy and preventing jury confusion.

paragraphs of the preceding count, based on negligence. Paragraphs 38, 45 and 46 of the assumpsit count are verbatim reproductions of paragraphs 9, 10 and 35 in the trespass count, respectively. Significantly, in count II, it is *only* these paragraphs which allege any standard by which to test an implied contract claim. In other words, the allegations which purport to give rise to the breach of implied contract count are the same allegations contained in the negligence count. The remaining paragraphs of plaintiff's assumpsit count allege no special circumstances relevant to an implied contract cause of action in medical malpractice. Those paragraphs refer to *written* contracts and documents which are not attached to the complaint. They discuss billing procedures, commercial enterprises, fiduciary/agency relationships and obligations to pay. None of this added verbiage relates to the standard of care which defendants allegedly breached on an implied contract theory. After eliminating the irrelevant, the court is left only with allegations identical to those set forth in plaintiff's negligence count. In effect, counts I and II of the complaint are mirror images.

The court is persuaded by the reasoning of several Pennsylvania trial courts in holding that the identical assumpsit count in such instances can be stricken as redundant. If this court were to rule otherwise, it would be permitting, absent proof of special circumstances, a simultaneous suit to be allowed for negligence and implied contract even though the implied contract is based solely on the allegations of negligence. In doing so, the court would be ruling against the legal theory set forth by the late Supreme Court Chief Justice Fred H. Vinson when he said as follows: "At best the operation of the rule . . . may be expected to confound

confusion in a field already replete with complexities." *Trupiano v. United States,* 1334 U.S. 699, 716, 68 S.Ct. 1229, 1238, 92 L.Ed. 1663, 1675 (1948). Giving due consideration to the above, the court is reluctant to allow these duplicate causes of action. Also, the court wishes to avoid the potential for jury confusion at the time of trial. As such, plaintiff's count II, sounding in assumpsit, must be stricken with prejudice and the case will proceed solely on the negligence claim.

Finally, defendants' request that plaintiff's punitive damage claim be stricken is denied as premature. Plaintiff has alleged facts in her complaint which could constitute conduct more egregious than ordinary negligence, warranting a possible award of punitive damages. Defendants may raise the issue again at time of trial.

### ORDER

And now, April 18, 1989, it is hereby ordered, adjudged and decreed that the preliminary objections of defendants Aesthetic Reconstructive Surgery, P.C., Saint Vincent Health Center, Frank M. Tooze, M.D., and Winston Chu, M.D., requesting that plaintiff's assumpsit count (count II) be stricken is granted and it is directed that this case shall proceed solely on the trespass count. Further, defendants' preliminary objections requesting that plaintiff's claim for punitive damages be stricken is hereby denied.