**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2759
_____

BRANDI BOOKER, Administrator, Estate of Elaine Booker,
Appellant

v.

UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-15-cv-05070)
Chief District Judge:  Hon. Juan R. Sanchez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a):
June 20, 2019
_____

Before:  AMBRO, RESTREPO, and FISHER, *Circuit Judges*.

(Filed:  October 24, 2019)

_____

OPINION[*]
_____

---

[*]  This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

The estate of Elaine Booker appeals the District Court's entry of judgment in favor of the Government, against which Booker's estate brought suit under the Federal Tort Claims Act, 28 U.S.C. § 1346. Following a bench trial on the merits of Booker's claims, the District Court found that Greater Philadelphia Health Action ("GPHA") and its agents, Dr. Heather Ruddock and Dr. Monica Mallory-Whitmore, could not be held liable for negligence with respect to the circumstances surrounding Booker's unfortunate death.

Similar to the District Court's findings, we hold that GPHA and its physicians did not breach their duty of care in treating Booker. We therefore will affirm.

**I.**

In 2008, Booker, an employee of GPHA, underwent a routine screening for tuberculosis as part of GPHA's employee health program (the "Health Program"). The results of Booker's screening indicated that she had been exposed to the bacteria that causes tuberculosis. Dr. Ruddock, GPHA's Health Program physician, ordered a chest X-ray for Booker, which did not indicate that she had active tuberculosis. As a result, Dr. Ruddock diagnosed her with latent tuberculosis.

Dr. Ruddock wrote Booker a nine-month prescription for Isoniazid ("INH"). Dr. Mallory-Whitmore, a GPHA physician who saw Booker in some capacity unrelated to the tuberculosis screening, was the prescribing physician named on the medicine bottle. Booker took the INH medication as prescribed for four months.

In late February 2009, Booker began to experience flu-like symptoms, and two months later she began to experience a series of other physical issues, including vomiting

2

and loss of appetite. Booker was diagnosed with INH-induced liver toxicity on April 16, 2009, and, nine days later, she tragically died as a result of acute liver failure due to INH toxicity. She was sixty-one years old.

Booker's estate then brought a wrongful death suit against the Government under the Federal Tort Claims Act, alleging that (a) Dr. Whitmore negligently treated Booker as her prescribing physician, (b) Dr. Ruddock negligently treated Booker by prescribing INH without subsequently monitoring her treatment, and (c) GPHA negligently supervised its healthcare providers and negligently designed its Health Program. The District Court held a three-day bench trial in May 2015. On July 19, 2018, after a procedural error was resolved, the District Court entered judgment in favor of the Government on all three claims, concluding that Booker's estate failed to show by a preponderance of evidence that GPHA or its agents breached their duty of care.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1346(b), and we have jurisdiction pursuant to 28 U.S.C. § 1291. After a bench trial, we "review a district court's findings of fact . . . under the clearly erroneous standard." *Am. Soc'y for Testing & Materials v. Corrpro Cos.*, 478 F.3d 557, 566 (3d Cir. 2007). We consider the Court's legal determinations *de novo* but must give "due regard . . . to the trial court's judgments as to the credibility of the witnesses." *DeJesus v. U.S. Dep't of Veterans Affairs*, 479 F.3d 271, 279 (3d Cir. 2007) (quoting *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006)).

**III.**

In Pennsylvania, it is settled law that a plaintiff must establish the four elements of duty, breach, causation, and actual harm to succeed on a medical malpractice claim. *Hightower-Warren v. Silk*, 698 A.2d 52, 54 (Pa. 1997). The plaintiff must present expert testimony to establish these elements because the medical field is generally beyond the scope of a layperson's ordinary knowledge. *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) ("[A] plaintiff must present medical expert testimony to establish that the care and treatment of the plaintiff by the defendant fell short of the required standard of care and that the breach proximately caused the plaintiff's injury.").

The applicable duty of care in this case is the standard articulated by a credible expert witness, as established through expert testimony.[1] To establish the applicable duty of care, the District Court found credible and relied on the expert testimony of Dr. Jennifer Patterson, who testified on Plaintiff's behalf, and Dr. James Hamilton, who testified on the Government's behalf. We see no reason to disturb these credibility findings. *See DeJesus*, 479 F.3d at 279.

---

[1] *See, e.g.*, *Rittenhouse v. Hanks*, 777 A.2d 1113, 1116–17 (Pa. Super. Ct. 2001) (determining the community standard of care by relying on expert testimony in a medical malpractice case following a patient's death from liver failure allegedly caused by a cancer medication); *Gunn v. Grossman*, 748 A.2d 1235, 1239–40 (Pa. Super Ct. 2000) (determining the applicable duty of care by relying on expert testimony in a medical malpractice case involving a negligently prescribed drug). This case is a wrongful death action, based on an allegedly negligent prescription of medication. Because the facts of this case align more closely with that of medical malpractice or ordinary negligence, we decline to impose the duty applicable to a prescribing physician as set forth in *White v. Weiner*, 562 A.2d 378, 386 (Pa. Super. Ct. 1989).

## IV.

### A. Claim Involving Dr. Whitmore

Plaintiff's claim involving Dr. Whitmore fails under the "duty" element of negligence because Plaintiff failed to demonstrate that Dr. Whitmore owed Booker a duty of care. Plaintiff presented no evidence that Dr. Whitmore was involved in Booker's tuberculosis screening or treatment. Thus, Dr. Whitmore did not owe Booker a duty of care with respect to the INH prescription and has no liability for Booker's death. *See Thierfelder v. Wolfert*, 52 A.3d 1251, 1265–66 (Pa. 2012) ("The well-settled standard of care for a general medical practitioner is to 'possess and employ *in the treatment of a patient* the skill and knowledge usually possessed by physicians in the same or a similar locality . . . .'" (emphasis added) (quoting *Donaldson v. Maffucci*, 156 A.2d 835, 838 (Pa. 1959))).

### B. Claim Involving Dr. Ruddock

Although Dr. Ruddock owed Booker a duty of care as the Health Program physician who interpreted Booker's screening and prescribed INH as treatment for Booker's latent tuberculosis diagnosis, *see id.*, we agree with the District Court that Dr. Ruddock adhered to her duty of care. As a preliminary matter, both experts agreed that Dr. Ruddock's treatment of Booker's latent tuberculosis—the nine-month prescription of INH in the absence of contraindications and subsequent monitoring by a primary-care physician—was appropriate. *See Toogood*, 824 A.2d at 1145.

Further, both experts testified that it was "equally appropriate" for Dr. Ruddock to prescribe INH and monitor Booker's liver function herself as it was for Dr. Ruddock to

refer Booker to her primary-care physician.  Therefore, Dr. Ruddock cannot be faulted for choosing one of two proper treatment options.  *See Donaldson*, 156 A.2d at 838 ("[W]here among physicians or surgeons of ordinary skill and learning more than one method of treatment is recognized as proper, it is not negligence for the physician or the surgeon to adopt either of such methods . . . .").

### C.  Claim Involving GPHA

GPHA cannot be held vicariously liable for the negligence of its agents, Dr. Mallory-Whitmore and Dr. Ruddock, because, as outlined above, its agents did not act negligently.  Thus, no negligence can be imputed to GPHA.  *See Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 597 (Pa. 2012).  Additionally, GPHA did not breach its duty of care in designing the Health Program.  The District Court credited the testimony of the GPHA's Director, Dr. Janet Young, that the Health Program requires tuberculosis screening for the safety of GPHA's patients and reasonably provides medical professionals discretion to use their professional judgment in prescribing a specific treatment for latent tuberculosis.  The Health Program's required screening and deference to the professional judgment of medical professionals regarding appropriate treatment was well within the standard of care.  *See Toogood*, 824 A.2d at 1145; *Donaldson*, 156 A.2d at 838.

**V.**

For the foregoing reasons, we will affirm the judgment of the District Court.

6